## CAPERTON v. BALLARD.

To bring a case here under the 25th section of the Judiciary Act, on the ground that the provision of the Constitution which ordains that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," has been violated by a refusal of the highest State court to give proper effect to a judicial record of another State, it is necessary that it appear that the record have been authenticated in the mode prescribed by the act of May 26th, 1790, "to prescribe the mode in which the public acts, records, and judicial proceedings in each State shall be authenticated, so as to take effect in every other State."

ERROR to the Supreme Court of Appeals of Western Virginia; the case being thus:

The Constitution of the United States ordains "that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," and also ordains that "the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

Congress in execution of this power thus given to it, by act of May 26th, 1790,* passed a statute prescribing the mode in which "the records and judicial proceedings of the courts of any State shall be authenticated, so as to take effect in every other State." This statute enacts:

"That the records and judicial proceedings of the courts of any State shall be proved or admitted in any other court within the United States, by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form."

The act then proceeds:

"And the said records and judicial proceedings, *authenticated as aforesaid*, shall have such faith and credit given to them in every court within the United States, as they have by law or

---

* 1 Stat. at Large, 122.

usage in the courts of the State from whence the said records are or shall be taken."

In this state of the law one *William A.* Ballard, as administrator of William Ballard, deceased, brought suit against a certain Caperton, in the State' Circuit Court of Monroe County, West Virginia—a county prior to about the 20th of June, 1863, of Virginia, but after that date a county of West Virginia—for a tortious seizure, sale, and destruction of the property of the intestate.* The letters of adminis tration were issued to the plaintiff by the Circuit Court of Monroe County, on the 25th of April, 1866, after the suppression of the rebellion. In bar of the suit the defendant pleaded that on the 16th of February, 1863, letters had been duly granted by the County Court of the same county, on the same estate, to one *John C.* Ballard, who properly qualified as administrator. To this it was replied that the letters were granted by a court in rebellion, and void.

On the trial the plaintiff produced evidence to show that he was regularly appointed administrator by the Monroe County Circuit Court, on the 25th of April, 1866. The defendant, on the other hand, in order to sustain his plea, offered in evidence an order from the County Court of the same county, dated February 16th, 1863, reciting that administration of the estate of William Ballard, deceased, is granted to *John C.* Ballard, who had made oath, &c., and " that letters in due form are granted to him." This order, so far as the record shows, was certified in no other manner than by the teste of the clerk, one Lewis Callaway. There was not even a seal attached to the certificate. The defendant then offered evidence that he had paid to *this* administrator the net proceeds of the alleged tortious seizure and sale of the decedent's property, and he requested the court

---

* The defendant, in this case, was the same one as in the preceding case; and his acts were done, here as there, as provost marshal of the Confederate government. This case, accordingly, had certain points in common with the preceding case, but as those points had been already decided when the opinion in this one was given, the court only noticed now one point not presented by that case.

to charge that if the administration of the plaintiff's intestate had been granted to *John C.* Ballard by the County Court, composed of justices who held their commission under the authority of the Commonwealth of Virginia issued to them in 1860, such appointment was sufficient to authorize *him* to act as such administrator, and that there could be no other appointment subsequent thereto until the original appointment was set aside by a court of competent jurisdiction. The court refused so to charge, but on the contrary charged that if on the 16th of February, 1863, when the appointment of *John C.* Ballard was made by the Monroe County Court, that court was in rebellion against the government of the United States, and was composed of justices who were then engaged in giving aid and comfort to the rebellion by levying supplies, &c., its proceedings were void, and that their appointment to John C. Ballard gave no authority, and that it was not necessary to set aside an invalid order of such a court in order to give effect to the plaintiff's appointment, which was made by a competent tribunal.

Judgment having been given against the defendant, he took the case to the Supreme Court of Appeals of West Virginia, where the instruction was declared to have been proper and the judgment was affirmed.

The judgment was now brought here by the defendant, Caperton, on an assumption that he could properly bring it, on the case stated, under the 25th section of the Judiciary Act, quoted *supra*, pp. 5, 6.

*Mr. J. Hubley Ashton (with whom was Mr. B. Stanton)*, having asked to have the writ of error dismissed for want of jurisdiction; *Messrs. Conway Robinson, R. T. Merrick, and Simeon Nash, argued contra, and in support of the jurisdiction*, that it existed under that clause of the Constitution which provides for giving effect in one State to the judicial proceedings of every other State, and that this constitutional provision had been disregarded, because the courts in West Virginia did not give proper effect to the letters granted in 1863 by the court of a county which at that time formed a

part of Virginia, but which, when the subsequent letters were granted, and this suit was tried, had become incorporated into West Virginia.*

Mr. Justice DAVIS delivered the opinion of the court.

This court has repeatedly declared that it is only under the 25th section of the Judiciary Act that it takes cognizance of error committed in the highest courts of a State. There must be a Federal question, within the terms of that section, to enable us to review the decision of a State tribunal. Is there such a question here?

It is argued that a constitutional provision has been disregarded, because the courts in West Virginia did not give proper effect to the letters granted in 1863 by the court of a county which at that time formed a part of Virginia, but which, when the subsequent letters were granted, and this suit was tried, had become incorporated into West Virginia.

It may be conceded that the decision on this subject could be reviewed, if the record showed a state of case in which this provision of the Constitution was applicable, but in the absence of this we cannot consider the point, whatever may be the hardship of this particular suit. The same constitutional provision which ordains "that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," also ordains that "the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." Congress acted on this subject, and on the 26th of May, 1790, prescribed the manner in which judicial records, and the proceedings of the courts of any State shall be authenticated, so as to be considered proved and admitted in any other court in the United States. This act declares further that the said records and judicial proceedings, *authenticated as aforesaid*, shall have such faith and credit given to them in every other court within the United.

---

* See Virginia *v.* West Virginia, 11 Wallace, 39, for the dates connected with the formation of the new State of West Virginia.

States as they have by law, or usage, in the courts of the State from whence the said records are. or shall be taken. The mode of authentication prescribed by the law requires the attestation of the clerk with his seal attached, and the certificate of the judge that the attestation was in due form. If a judicial proceeding has the effect of record evidence in the courts of the State from which it is taken, it has the same effect in the courts of every other State. To receive this conclusive effect, however, it must not only be pleaded but proved in conformity with the act of Congress on the subject. Unless this is done there is nothing for this court to act upon.

It is only through the instrumentality of the statute that the clause of the Constitution, which the plaintiff in error relies on, can be invoked for his protection. Legislation was required to make the constitutional provision effective, and this having been done by a general law, it requires no argument to show that a party cannot claim that a right under the Constitution and law has been denied him by a State court, unless he has used the means for his protection which the statute directs.

This the plaintiff in error failed to do. He relied for his justification upon letters of administration granted in 1863 by the County Court of Monroe County, while it was a part of Virginia, but did not furnish the legal evidence required to establish the existence of the record. It would seem that in Virginia, the tribunals intrusted with probate business were designated by the name of County Courts, while in West Virginia the Circuit Courts of each county were empowered to grant letters of administration. Doubtless the County Court records of Monroe County were transferred to the custody of the clerk of the Circuit Court, after West Virginia was admitted into the Union. This is fairly inferable from the fact that the only evidence offered of the grant of letters in 1863 was the transcript of the records of the County Court, under the hand of Lewis Callaway, styling himself clerk of the Monroe County Circuit Court.

This proof, if received by the State court as sufficient to

establish the record of a judicial proceeding in Monroe County, while a part of Virginia, lacked the formalities required by the act of Congress. The seal of the County Court was wanting, as well as the certificate of the presiding magistrates. It will not do to say that they could not be procured on account of the anomalous condition in which the records of the county were placed by the change of jurisdiction. There is nothing to show that any effort was made to supply the omission. In fact the case does not seem to have been tried in reference to the conclusive effect of the judgments of one State in the courts of another. It rather seems to have been tried on the theory that the judgment was void because the court granting the letters was disloyal. Indeed, neither in the pleading nor proof is the particular provision of the Constitution on this subject relied on. It is certainly not set up in words, nor from the pleading itself could an inference even be drawn that Monroe County in 1866 was not in the same State as in 1863. It is only through the history of the country that we ascertain this fact.

It may be that the attention of the court below was called to the conclusive effect of judicial proceedings under the Constitution and laws of Congress, but if so, there is nothing in the record to show it. It is, doubtless, unfortunate that the plaintiff in error did not in proper terms set up the right he now claims, and conform his proof to the requirements of the law. If he had done so, and the decision had been adverse to him, he could have had it reviewed here, although the question would still arise whether the constitutional provision concerning the effect of judgments of different States would be applicable on account of the transfer of Monroe County to the jurisdiction of West Virginia. As the case is, the Federal question is not presented at all, and the writ of error must be

DISMISSED FOR WANT OF JURISDICTION.